Department of Revenue Administration
No. 90-418

### PETITION OF KENNETH A. LORDEN, FREDERICK LORDEN, FRANCIS J. LORDEN, AND LORDEN LUMBER COMPANY, INC.
### (New Hampshire Department of Revenue Administration)

August 2, 1991

*Wiggin & Nourie,* of Manchester (*Mark A. Langan* on the brief and orally), for the plaintiffs.

*John P. Arnold,* attorney general (*Daniel J. Mullen,* assistant attorney general, on the brief and orally), for the department of revenue administration.

JOHNSON, J. The plaintiffs appeal the department of revenue administration's (the DRA) denial of their request for a tax refund. The issue presented is whether the distribution of unencumbered corporate assets to stockholders upon the corporation's dissolution and liquidation is a taxable event subject to a transfer tax pursuant to RSA 78-B:1, I (*see* Laws 1985, 407:1; current version at Supp. 1990).

We hold that the plaintiff stockholders gave no consideration for the distributed assets, and therefore are required to pay only the statutory minimum transfer tax. Accordingly, we reverse and remand.

The facts of this case are not in dispute. The plaintiffs Kenneth A. Lorden, Frederick Lorden, and Francis J. Lorden were the sole stockholders and sole directors of Lorden Lumber Company, Inc. (the corporation). On August 5, 1985, the Lordens voted in their capacities as directors to dissolve the corporation. *See* RSA 293-A:85. As a result of the dissolution, certain unencumbered real estate owned by the corporation passed by operation of law to each of the Lordens as stockholders. *See* RSA 293-A:88, II. The Lordens then paid, under protest, a transfer tax based on the fair market value of the real estate. The DRA denied their request for a refund, and their subsequent motion for rehearing. This appeal followed.

Before we address the merits of this case, we must resolve a procedural issue that came to our attention in the plaintiffs' notice of appeal. RSA chapter 78-B, governing the transfer tax, does not appear to authorize an appeal to this court. Instead, the relevant statute states: "Within 30 days after notice of any adjustment to tax by the commissioner under RSA 78-B:9, a taxpayer may appeal the commissioner's determination either by written application to the board of tax and land appeals or by petition to the superior court . . . ." RSA 78-B:12 (Supp. 1990). Consequently, we asked the parties to brief the issue of whether this court has jurisdiction of the plaintiffs' appeal.

The plaintiffs point out that RSA 78-B:12 (Supp. 1990) applies only to cases in which the taxpayer receives a notice of adjustment; that is, a notice that a disputed tax is owed to some extent. Because here the taxpayers challenge the denial of a total refund for tax already paid, under protest that no tax is due, they argue that RSA 78-B:12 (Supp. 1990) is inapplicable. Accordingly, the plaintiffs rely on RSA 541:6, which details the procedure available to parties seeking review of certain decisions made by State officials. The statute reads: "Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the decision on such rehearing, the applicant may appeal by petition to the supreme court."

■■■ We agree with the plaintiffs that RSA 78-B:12 (Supp. 1990) does not apply to this case, but disagree that RSA 541:6 may be automatically invoked instead. As the DRA has noted, RSA 541:2 stipulates that the appeal procedure outlined in RSA 541:6 applies to

a particular case only "[w]hen so authorized by law." We have interpreted this clause to mean that "[t]he provisions of this chapter do not provide an appeal from the determination of every administrative agency in the state. Unless some reference is made to [chapter 541] in any given statute, an appeal under the provisions of [chapter 541] is not 'authorized by law.'" *Petition of Dondero,* 94 N.H. 236, 236–37, 51 A.2d 39, 39–40 (1947) (interpreting R.L. ch. 414, precursor to RSA 541:6). RSA chapter 78-B does not reference RSA chapter 541 in any way, and thus the plaintiffs may not invoke the provisions of RSA 541:6, allowing a party to appeal directly to this court.

 Although the plaintiffs are not entitled to an appeal under RSA chapter 78-B, and "have mistaken their remedy, our practice permits consideration of their petition as one for writ of *certiorari*, entitling them to the limited determination of whether the Commission has acted 'illegally in respect to jurisdiction, authority or observance of the law.'" *Winn v. Jordan,* 101 N.H. 65, 67, 133 A.2d 485, 487 (1957) (citation omitted); *accord Appeal of Hollingworth,* 122 N.H. 1028, 1032, 453 A.2d 1288, 1290–91 (1982); *Connell's New & Used Cars, Inc. v. State,* 117 N.H. 531, 532, 375 A.2d 257, 257–58 (1977); *see also Cumberland Farms v. Pierce,* 104 N.H. 489, 502, 190 A.2d 403, 413 (1963) (error of law open to correction on writ of certiorari); *In re Doe,* 126 N.H. 719, 722–23, 495 A.2d 1293, 1296 (1985) (review on certiorari usually available only in absence of right to appeal); R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1283, at 161 (1984) (writ of certiorari granted "when no alternative means exist of assuring that the tribunal has kept within the limits of its legal authority"). We hold that we may properly consider the plaintiffs' petition as a petition for a writ of certiorari and determine whether a tax is due.

We turn now to the merits of the case. The transfer tax statute in effect at the time of the corporation's dissolution reads, in pertinent part:

> "A tax is imposed upon the sale, granting and transfer of real estate and any interest therein . . . . The rate of the tax is $.375 per $100, or fractional part thereof, of the price or consideration for such sale, grant or transfer; except that where the price or consideration is $4,000 or less there shall be a minimum tax of $15."

RSA 78-B:1, I (*see* Laws 1985, 407:1; current version at Supp. 1990) (hereinafter referred to as "former RSA 78-B:1, I"). "Price or consideration" is defined in the revenue regulations as "the total amount

paid or required to be paid for the real estate valued in money whether received in money or otherwise and shall include the amount of any mortgages, paid taxes . . . liens, or other encumbrances assumed by the buyer." N.H. ADMIN. RULES, Rev 801.01.

The plaintiffs argue first that upon dissolution of the corporation, no "sale," "granting," or "transfer" of real estate took place, and thus no tax was owed. Instead, the plaintiffs maintain, the real estate simply "passed" from the corporation to the stockholders by operation of law. Second, the plaintiffs argue that, even if a transfer did take place for purposes of RSA 78-B:1, I, the Lordens paid no consideration for the real estate, and thus are entitled to a refund of the taxes paid. The DRA responds that (1) the "passing" of the corporate real estate to the stockholders was a "transfer," according to the plain meaning of the word; and (2) the Lordens gave adequate consideration for the real estate in that they gave up their rights to manage the corporation and to receive corporate profits.

We have previously stated that the unencumbered real estate owned by the corporation passed to the stockholders by operation of law. See RSA 293-A:88, II. This statute states that upon dissolution, "[t]he corporation shall . . . after paying or adequately providing for the payment of its obligations, distribute the remainder of its assets, either in cash or in kind, among its stockholders according to their respective rights or interests." While we believe plaintiff's second argument, noted above, is the most persuasive, we should note that it has been held that no tax is due in this situation because the "transfer" of assets by deed, from the corporation to the stockholders, is merely confirmatory. As the court in *Commonwealth v. Passell,* 422 Pa. 473, 223 A.2d 24 (1966) stated:

> "When the [stockholders] surrendered for cancellation their stock certificates then, in the absence of any obligations owed . . . this realty became vested in and passed to its stockholders *by operation of law.* The provisions of the liquidation statute that the 'property remaining' in a debt-free corporation 'shall be paid or distributed' merely provide the mechanical operation required of the directors for record purposes: by operation of law the transfer of the remaining corporate assets to the stockholders has already taken place and the statutory requirement simply supplements that which has already occurred. We agree with the [stockholders'] statement: 'The only purpose of the deed in a corporate liquidation and dissolution is simply to place on record information regarding the transfer . . . .'"

*Id.* at 480–81, 223 A.2d at 28–29 (emphasis in the original).

■ Assuming *arguendo* that a "transfer" did take place for purposes of former RSA 78-B:1, I, we hold that the Lordens gave no consideration in exchange for the real estate, and that this was therefore not a fully taxable event contemplated by the taxing statute.

We first note that the DRA cites no authority to support its argument that stockholders who receive unencumbered real estate as a result of a corporation's dissolution have "paid for" the real estate, or have given consideration for it, by giving up their rights to manage the corporation and to receive profits, and we have found no authority for this proposition. Moreover, the plaintiffs cite several cases which support their argument that a stockholder gives *no* consideration for unencumbered real estate which passes to him or her upon a corporation's dissolution. *See, e.g., Greyhound Corp. v. United States*, 208 F.2d 858, 860 (7th Cir. 1954) (construing statute governing former federal documentary stamp tax); *R.H. Macy & Co. v. United States*, 107 F. Supp. 883, 885 (S.D.N.Y. 1952) (same); *Tide Water Associated Oil Co. v. Jones*, 57 F. Supp. 482, 483 (W.D. Okla. 1944) (same); *Socony-Vacuum Oil Co. v. Sheehan*, 50 F. Supp. 1010, 1012 (E.D. Mo. 1943) (same); *Florida Dept. of Revenue v. De Maria*, 338 So. 2d 838, 840 (Fla. 1976) (construing statute governing State documentary stamp tax); *Straughn v. Story*, 334 So. 2d 337, 338 (Fla. Dist. Ct. App. 1976) (same), *cert. denied*, 348 So. 2d 954 (Fla. 1977); *Weaver v. King County*, 73 Wash. 2d 183, 184, 437 P.2d 698, 699 (1968) (construing statute governing transfer tax); *Deer Park Pine Industry, Inc. v. Stevens County*, 46 Wash. 2d 852, 857, 286 P.2d 98, 100–01 (1955) (same, stating that loss of right to manage corporation does not constitute consideration for receiving corporate assets upon dissolution).

In addition to this weight of authority, basic principles of contract law persuade us that the plaintiffs gave no consideration for the unencumbered real estate they received. Former RSA 78-B:1, I, provides that the transfer tax is based on the "price or consideration" for each transfer of real estate. "[P]rice or consideration," in turn, is defined as "the total amount paid or required to be paid for the real estate valued in money whether received in money or otherwise." N.H. ADMIN. RULES, Rev 801.01. While this definition tells us that "price or consideration" need not be paid in the form of money, it does little to clarify the meaning of "price or consideration." No one contends that the Lordens paid a "price" for the real estate they acquired upon the dissolution of their corporation. We turn then to

the traditional definition of "consideration": "legal detriment, that has been bargained for by the promisor [here, the corporation] and exchanged by the promisee [here, the stockholders] in return for the promise of the promisor." J. CALAMARI & J. PERILLO, CONTRACTS § 4-2, at 189 (1987).

■ The concept of consideration is comprised of two elements: first, a legal detriment to the promisee (with a corresponding legal benefit to the promisor), and, second, a bargained-for exchange. *Id.* at 187–89. Assuming *arguendo* that a shareholder's relinquishment of the right to manage a corporation and to receive dividends from its profits satisfies the first element, it cannot, however, satisfy the second. As the DRA points out, the stockholders and the corporation are two separate entities, and we must view them as such for purposes of our analysis. Even though the stockholders in this case were also the directors of the corporation, there is a crucial distinction between acts done by the Lordens as stockholders, and acts of the Lordens done as directors of Lorden Lumber Company, Inc. The former acts are acts of the stockholders, while the directors' acts are legally made on behalf of the corporation.

As noted earlier, the Lordens qua *directors* made the decision to dissolve the corporation. Once this decision was made, the stockholders had no choice but to relinquish their rights to have a voice in the corporation's affairs and to receive dividends from corporation profits. This "detriment" was not exchanged by the stockholders in return for the "promise" of the corporation to dissolve itself and distribute its assets. Rather, the "detriment" was merely the legal effect of the corporation's decision. *See Deer Park*, 46 Wash. 2d at 857, 286 P.2d at 100–01. Thus, the stockholders' "detriment" could not have induced the corporation's "promise" in a bargained-for exchange, *see* J. CALAMARI & J. PERILLO, CONTRACTS § 4-2, at 189, because the corporation's "promise" to dissolve itself would inevitably have *caused* the "detriment" to the stockholders regardless of whether or not the stockholders agreed to the exchange.

■■ Because there was no bargained-for exchange, there was no consideration upon which the DRA could base a tax pursuant to former RSA 78-B:1, I. Thus, the plaintiffs are required to pay the statutory minimum tax where there is no consideration, and are otherwise entitled to a refund of the tax paid.

*Reversed and remanded.*

HORTON and THAYER, JJ., dissented; the others concurred.

HORTON, J., dissenting: Notwithstanding my reservations concerning the application of the RSA 78-B:12 appeal provisions to this

case, which I will not discuss, I would suggest that under the statutory scheme of RSA chapter 78-B, the conveyance of real estate from Lorden Lumber Company, Inc. to the individual plaintiffs Lorden was a transfer under RSA 78-B:1, as then in effect. The real estate did not pass by operation of law, as stated by the majority, but was identified as a corporate asset not necessary to satisfy corporate obligations; was selected as a corporate asset not to be converted to cash, and was distributed, in kind, to the shareholders. Although following the statutory dissolution mandates of RSA 293-A:88, II, this transaction requires a transfer from the corporation, and the property should not be characterized as passing by operation of law.

To reach the consideration issue, the majority "assumes" a transfer. I would hold that a transfer took place and find that the transfer was a taxable event under RSA 78-B:1. A taxable event having occurred, whether under the majority's assumption or my analysis a tax is due. The amount of consideration must be determined in order to establish the amount of tax due. If there is no consideration (or less than $4,000), the appropriate tax is the minimum tax ($15).

I am convinced that the department of revenue administration correctly denied the refund. The individual Lordens held corporate stock which had value. When the real estate was transferred out of the corporation the value of that stock was reduced by some amount. Therefore, in the dissolution process there was less due to them from the corporation. All the "bargaining" that the majority feels was required was undertaken when the corporation was established. The parties incorporated under, and accepted the provisions of, the corporate law of this State. On incorporation, the shareholders agreed that upon dissolution of the corporation they would exchange the incidents of stock ownership for such real and personal property as may remain after the satisfaction of corporate obligations. See RSA 293-A:88, II. The dissolution procedure required a resolution of the board of directors recommending dissolution, and an agreement of the shareholders by action on the resolution. See RSA 293-A:85. When financial exchanges occur incident to the provisions of that law, there is consideration for the transfers. While establishing the amount of consideration is difficult, I find particularly appropriate in this case the department's use of the value of the asset transferred to establish the presumptive value of the consideration.

It is easy to sympathize with honest citizens who, holding land in a closely held corporation, want to do away with the corporate form of holding and return to individual ownership. This might well be a form of transfer the legislature would choose to exempt from tax

someday. However, this court should not undertake to establish the exemption. The impact of today's decision reaches beyond the closely-held family real estate holding company. A major taxable transfer can be avoided, under today's decision, by arranging for real estate to be the sole asset in a corporate or partnership name. This must be accomplished under favorable federal tax circumstances or with appropriate federal tax planning. The capital stock is then transferred or the partnership interest is assigned, to the buyer, who follows the Lorden liquidation and dissolution procedure.

I would affirm the department's decision and dismiss the appeal.

THAYER, J., joins in the dissent.